CASE 9.—ACTION BY THE PADUCAH COOPERAGE CO. AGAINST THE PADUCAH VENEER & LUMBER CO.—Oct. 22, 1909.

## Paducah Cooperage Co. v. Paducah Veneer Co.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for defendant, plaintiff appeals—Reversed.

1. Quieting Title—Actions—Admissibility of Evidence.—In an action between parties owning the north half and south half of a lot to quiet title to a strip of land claimed by both near the middle of the lot, evidence that plaintiff's president saw and knew of the erection by defendant seven years before, of a boiler room, on a part of the strip in controversy, and made no objection thereto, was material as bearing on the question of defendant's possession of the ground and the understanding of the parties as to the true location of the line separating the lot of plaintiff from that of defendant.

2. Witnesses—Competency—Effect of Decree of Party in Interest.—Civ. Code Prac. Sec. 606, providing that no person shall testify concerning statements of a person deceased at the time testimony is offered, does not prevent an agent from testifying for his principal as to transactions had by him as such agent through the agent of another, although the agent of the other person be dead at the time of the giving of such testimony, where it appears that the agent has no personal interest in the business of his principal.

Paducah Cooperage Co. v. Paducah Veneer Co.

3. Quieting Title—Instructions.—Evidence, in an action to quiet title, held insufficient to warrant submission to the jury of defendant's claim of possession of the land in controversy.

4. Adverse Possession—Nature and Requisites—Actual Possession—Inclosure.—Where plaintiff has title to one-half of a lot, and defendant has title to the other half, and there is a dispute as to the location of the line separating the two parts, a claim by one of them for more than 15 years that the strip in controversy is its property will not give title to the strip, in the absence of inclosure or actual occupancy thereof adversely to all others.

5 Trial—Taking Case from Jury—Directing Verdict.—Where, in an action to quiet title, the issue is as to the true location of a line separating the land of plaintiff from that of defendant, and there is some evidence to support the location of the line .contended for by defendant, the case should go to the jury, although the weight of the evidence seemed to show the true location of the line was the one claimed by plaintiff.

6. Quieting Title—Answer—Description of Land.—Under Civ. Code Prac. Sec. 125, subsec. 2, providing that in an action for the recovery of land the answer must so describe the land that it may be identified, an answer is sufficient which claims the whole of the ground in controversy, the petition having given a particular description of the land, and the answer in effect adopting such description; and it would be only in the event that defendant claimed only a part of the ground in dispute that it would be necessary for the answer to describe such part so that it may be identified.

J. D. MOCQUOT for appellant.

1. The motion for a judgment non obstante veredicto should have been sustained by the court.

2. Testimony of an interested party as to admissions or transactions with the deceased agent of a corporation was inadmissible.

3. Instruction "B" offered by appellant clearly embodies the law and should have been given instead of No. 1 given by the court.

#### AUTHORITIES CITED.

Section 25, Civil Code; Brent v. Long, 99 Ky. 245; Bailey v. McConnell, 12 Ky. Law Rep. 473; Holmes v. Herringer, 12 Ky. Law Rep. 22; Mann v. Cavanaugh, 110 Ky. 776; Hughes v. Owen, 29 Ky. Law Rep. 140; Warden v. Addington, 115 S. W. 241.

WHEELER, HUGHES & BERRY for appellee.

Paducah Cooperage Co. v. Paducah Veneer Co.

POINTS AND AUTHORITIES.

1. In ejectment not necessary that answer should contain a description of the land in controversy if the defendant claim all thereof. Brent v. Long et al., 99th Ky. 245; Bailey v. McConnell, 12th Ky. Law Rep. 473; Sub-sec. 2 of Sec. 125, Civil Code of Practice; Jones v. Griffin, 25th Ky. Law Rep. 117.

2. Evidence of agent of corporation that the agent of another corporation was claiming certain land, which evidence is given in court after the death of the agent of the second corporation, not incompetent. Cobb's Adm'r v. Wolfe, 96 Ky. 418; F. & C. Co. v. Gaff, 17 Ky. Law Rep. 214; Brooks v. Spain, 22 Reporter 1178; Lyon's Executor v. Bank, 25 Ky. Law Rep. 1668.

3. Actual enclosure by a fence not necessary to support possession. Brisco v. McGee, 8th Ky., 1st A. K. Marshall 139 (side page 190); Cameron v. Beatty, 6th Ky. Law Rep. 589; Ky. L. & I. Co. v. Sloane. 25 Ky. Law Rep. 1515; Waite v. Gover, 11 Ky. Law Rep. 750; Ky. L. & I. Co. v. Crabtree, 113 Ky. 922; Sommers v. Green. 4th J. J. M. 137; Holmes v. Herringer, 12th Reporter 22.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action brought by appellant against appellee raises a controversy as to the ownership of a strip of ground in the city of Paducah. The strip of ground is of triangular shape, and begins at a point on Meyers street, extends a distance of 30 poles, and has a width of, perhaps, 30 feet at the end of the 30 poles. The trial in the. circuit court resulted in a verdict and judgment in favor of appellee. In the motion and grounds for a new trial filed by appellant in that court, it was contended that numerous errors were committed by the court to its prejudice, and it now insists that these alleged errors entitle it on this appeal to a reversal of the judgment.

One of the appellant's contentions is that the trial court erred in permitting Sowell, appellee's manager, to testify that Kilgore, at the time appellant's president, saw and knew of appellee's erecting seven years ago the boiler room of its mill on a part of the ground

in controversy, and yet made no objection thereto, it being claimed that this testimony should have been excluded because Kilgore was dead at the time of its admission. The testimony was material because of its bearing on the question of appellee's possession of the ground in controversy, and also on the matter of the understanding of the parties as to the true location of the line separating the lot of appellant from that of appellee, for the failure under the circumstances, of appellant's president to object to the erection of appellee's boiler house upon the ground in controversy, allowed the presumption that it was not included within the lines of appellant's deed, and amounted in some sort to a recognition on his part of appellee's right thereto. The admission of the testimony in question was not error. Section 606, Civ. Code Prac., does not prevent an agent from testifying for his principal as to transactions had by him as such agent with the agent of another, although the agent of the other person be dead at the time of the giving of such testimony. It does not appear that appellee's manager, Sowell, had any personal interest in the appellee corporation. He therefore, incurs no financial loss. nor gains any material benefit by the result of the litigation. An examination of the following authorities will show that this court has frequently recognized the competency of such evidence: Cobb's Adm'r v. Wolfe, 96 Ky. 418, 29 S. W. 303, 16 Ky. Law Rep. 591; F. & C. Co. v. Goff, 30 S. W. 626, 17 Ky. Law Rep. 214; Brooks v. Spain, 60 S. W. 184, 22 Ky. Law Rep. 1178; Lyon's Ex'r v. Bank, 78 S. W. 454, 25 Ky. Law Rep. 1668.

Appellant also contends that the trial court erred in instructing the jury. But one instruction was given. It is as follows, viz.:

"Gentlemen of the Jury: It is undisputed in this case that the plaintiff, Paducah Cooperage Company is the owner of the north half of lot No. 24 in the city of Paducah, Ky., and that the defendant, Paducah Veneer & Lumber Company. is the owner of the scuth half thereof. and that the plaintiff and defendant have paper titles and deeds to their respective halves of said lot from the same common grantor, and that the defendant has the oldest deed, and the court now instructs you that if you shall believe from the evidence in this case that the strip of land in controversy in this suit is embraced by, or included in, plaintiff's deed, then the law is for the plaintiff, and you will find for it said strip of ground in controversy, unless you shall believe from the evidence that said strip of land is also embraced by, or included in, defendant's deed; or that defendant, and those under whom it claims, was at any time, before the bringing of this suit, for a period of as much as 15 years, in the actual, continuous, adverse and peaceable possession of said south half of said lot No. 24 by having buildings or inclosures thereon, and claiming to a marked boundary or dividing line between plaintiff's and defendant's part of said lot, which marked or division boundary included the land in controversy in this suit then and in either of these events, and if you shall so believe, the law is for defendant, and you will so find."

We have reached the conclusion that the instruction contains one error. It should not have submitted to the jury the question of appellee's claim of possession, as there was no evidence upon which to base it. It is true that appellee's answer, after denying appellant's title and alleging title in itself to the ground in controversy, pleaded the statute of lim-

itations based on its alleged actual, adverse possession of the ground to a well-defined marked boundary for more than 15 years before the institution of appellant's action, but the evidence did not prove such possession or any other, except to a small part thereof occupied by its boiler shed for a period of 7 years. According to the evidence, appellee about 7 years ago rebuilt its mill, following a fire, at which time its boiler house was so constructed as to extend upon and occupy from 11 to 13 feet of the ground in controversy; its first actual adverse possession of the ground in dispute then began and has since continued, but back of that time no actual or adverse possession on its part of the ground was shown. Therefore its plea of the statute was unavailing. We do not overlook the fact that appellee as far back as 1884 caused Postlethwaite to survey its entire lot; that the latter then attempted to so establish a line between appellees' lot and that of appellant as to apparently include the land in controversy in the lot of appellee, and that stakes were driven in the ground, and perhaps a cottonwood tree marked on the bank of the Tennessee river to indicate the line attempted to be established; but it does not appear from the evidence by what, if any, title papers this work was done, or that appellant's vendor and then owner of its lot adjoining appellee's was present or had any notice thereof. Postlethwaite is dead, and no plat or other evidence of the survey in question was left by him; the stakes placed by him have long since been removed and the cottonwood destroyed, and the evidence as to where stakes and cottonwood stood was quite indefinite. There was some evidence tending to prove that appellee, since the surveying of Postlethwaite was done, has made claim to the ground

out to the line staked by Postlethwaite, but it failed to prove any actual possession by it of the ground in controversy, except what has been occupied during the last seven years by the boiler house of the mill.

It is true appellee has for more than 15 years had the actual and adverse possession of that part of lot 24 conveyed by its deed, but, unless the ground in controversy is in fact covered by the deed, such possession as it had did not extend to or include it. If it is not embraced by the boundary of appellee's deed, the latter by merely claiming it to the line staked by the surveyor, could have acquired no right to it as against the title of another without an inclosure or actual occupancy thereof adversely to all others for as much as 15 years.

It is admitted that appellant and appellee derived title from a common source; that by the plat recorded by the vendor, as well as the deeds to them, the ground owned by appellant is one half of lot 24, and that owned by appellee the other half of lot 24; that each deed purports to convey the same quantity of ground, and that appellee's deed is the elder of the two. Eliminating the question of possession from the case, it is manifest that the only issue that should have been submitted to the jury was as to the true location of the line separating the lots of appellant and appellee. As appellee's deed antedates that of appellant, it goes without saying that, if the ground in controversy is a part of the lot conveyed by its deed, the jury should have found for it; but on the other hand, if it is included in the boundary contained in the deed to appellant, the verdict should have been for the latter. Looking to the evidence on this issue, we find that that of appellant, consisting in the main of the surveys shown by the three plats found

in the record, and the testimony of the surveyors by whom they were made, strongly conduces to prove that the ground in question is a part of its lot and embraced by its deed. It further appears from the evidence that, by including the ground in controversy, appellant's lot will contain the precise quantity its deed purports to convey; but if it is added to appellee's lot, it will be found to exceed by perhaps as much as its size the quantity the deed of appellee purports to convey. On the other hand, appellee's claim to the ground in controversy finds some support in the evidence as to the Postlethwaite survey and the fixing of the line by him, evidence as to the building of the boiler house upon the ground in controversy with the knowledge and apparent acquiescence of appellant's president, Kilgore, and other evidence as to appellee's possession of the part occupied by the boiler house after that time; the evidence as to appellant's acquiescence in the erection of the boiler house being competent as tending to show that both parties understood the true line between their lots to be located as claimed by appellee. While it is apparently true that the weight of the evidence conduced to prove that the true location of the line separating the lot of appellant from that of appellee is as claimed by the former, as there was some evidence to support appellee's location of the line, the case should have gone to the jury; therefore, the peremptory instruction asked by appellant, which would have required the jury to find for it, was properly overruled.

In lieu of instruction No. 1, the court upon a retrial should give the following: "The jury are instructed that it is admitted plaintiff and defendant derived title, each to its own lot, from a common source, and

that defendant's deed antedates that of plaintiff. And if the jury believe from the evidence that the deed of the plaintiff embraces the strip of ground in controversy, and it is not embraced in the deed of the defendant, they should find for the plaintiff. But on the other hand, if the jury shall believe from the evidence that the strip of ground in controversy is embraced in the deeds of both plaintiff and defendant, or in the deed of defendant alone, they should find for the defendant.''

As previously intimated, an instruction on the question of adverse possession will not be necessary or proper, unless appellee should introduce proof showing actual occupancy, or an inclosure of the ground in controversy for the statutory period. Indeed, in the state of case here presented, if the ground in controversy is not embraced in appellee's deed, but is included in that of appellant, the only possession that would defeat appellant's title is such as appellee could have acquired by an inclosure of the ground, or actually occupying it for the statutory period no proof of which was made on the trial in the circuit court. Except as to the small part of it covered by appellee's boiler house for seven years it has had no other possession of the ground in controversy that appellant has not had and exercised, and neither has claimed title to or possession of it, except upon the ground that it was embraced by its deed, and therefore the possession of each has been and is limited to the true location of the line of division between the lots.

The case is, we think, governed by the rule announced in that of Holmes v. Heringer, 13 S. W. 359, 913, 12 Ky. Law Rep. 22, in the opinion of which it is said: ''For as both parties claim under the same

patent, no question of superiority arises in the case. Nor has either acquired any legal advantage by adverse possession of the land in contest, for both parties having the undisputed title to and possession of two adjoining tracts, respectively owned by them, must be regarded as claiming and holding up to the division line, wherever that may be, until one or the other, by actual inclosure, takes possession beyond. It is true appellee did have the disputed land under fence when the action was commenced by appellant, but as there is no evidence whatever showing it had been inclosed 15 years, he acquired no right thereby.''

It is further contended by appellant that its motion for a judgment non obstante should have been sustained by the trial court. We decline to accept appellant's view of that matter. The motion was bottomed upon the idea that, as the answer failed to give a particular description of the strip of ground in controversy, judgment by reason of that fact should have gone in appellant's favor. Waiving the question of whether the objection to the answer should have been presented by a demurrer or motion to make more specific, we do not think the pleading defective, for, as amended, it claimed for appellee title to, and alleges his possession of, the whole of the ground in controversy. The petition of appellant gave a particular description of the part in controversy. The answer in effect adopts this description and claims the whole of it as described. This was a sufficient compliance with the provisions of section 125, subsec. 2, Civ. Code Prac. If in the answer appellee had claimed only a part of the ground in dispute, then it would have been necessary for the answer to state what part of it was claimed, and ''so describe such part that it may be identified.'' But as already stated,

it claimed the whole of it as described in the petition.

The views we have expressed make it unnecessary to consider the refused instructions. On account of the error in the one instruction given, the judgment is reversed, and cause remanded for a new trial consistent with the opinion.